## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KATIE JOSEPH, ET AL.,**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO.  17-5051** |
| **JOHN DOE, ET AL.,**<br>    **Defendants** | **SECTION: "E" (4)** |

## ORDER AND REASONS

Before the Court is Plaintiffs' Motion to Exclude in Part the Testimony of Defendant's Expert Dr. Bihn Ly.[1] Defendants oppose Plaintiffs' motion.[2] For the reasons that follow, Plaintiffs' motion is **GRANTED in part and DENIED in part**.

## FACTUAL BACKGROUND

The facts of this lawsuit have been outlined before, and this Court need not do so again.[3] Any specific facts that bear on the Court's resolution of this motion shall be discussed below. In short, there are four remaining claims in this lawsuit: (1) a Section 1983 excessive force claim against Officers Martin and Costa; (2) a state-law battery claim against Officers Martin and Costa; (3) a state-law wrongful death claim against Officers Martin, Costa, Varisco, Rolland, Verrett, Faison, Vinet, Dugas, Morvant, and Thompson; and (4) a state-law survival claim against Officers Martin, Costa, Varisco, Rolland, Verrett, Faison, Vinet, Dugas, Morvant, and Thompson.[4]

---

[1] R. Doc. 70.

[2] R. Doc. 85. Plaintiffs replied to Defendants' opposition at R. Doc. 103.

[3] *Joseph on behalf of the Estate of Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020); *Joseph v. Doe*, Civ. A. No. 17-5051, 2019 WL 95467 (E.D. La. Jan. 3, 2019).

[4] There are no claims in this lawsuit against the City of Gretna under *Monell v. Department of Social Services of City of New York* in this lawsuit. Plaintiffs voluntarily dismissed their *Monell* claim on August 6, 2018.  R. Doc. 69.

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[5]

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[6] provides the analytical framework for determining whether expert testimony is admissible under Rule 702.

Under *Daubert*, courts, as "gatekeepers," are tasked with making a preliminary assessment of whether expert testimony is both relevant and reliable.[7] The party offering the expert opinion must show by a preponderance of the evidence that the expert's testimony is reliable and relevant.[8]

The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid."[9] In *Daubert*, the Supreme Court enumerated several non-exclusive factors that courts may consider in evaluating the reliability of expert testimony.[10] "These factors are (1) whether the expert's theory can or has been tested, (2) whether the theory has been subject to peer review and

---

[5] Fed. R. Evid. 702.
[6] 509 U.S. 579 (1993).
[7] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44, (5th Cir. 2002) (citing *Daubert*, 509 U.S. at 592–93).
[8] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).
[9] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). *See also Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584–85 (5th Cir. 2003).
[10] 509 U.S. at 592–96.

publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community."[11]

The Supreme Court has cautioned that the reliability analysis must remain flexible: the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."[12] Thus, "not every *Daubert* factor will be applicable in every situation . . . and a court has discretion to consider other factors it deems relevant."[13] The district court is offered broad latitude in making expert testimony determinations.[14]

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility and should be left for the finder of fact.[15] "Unless wholly unreliable, the data on which the expert relies goes to the weight and not the admissibility of the expert opinion."[16] Thus, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[17] The Court is not concerned with whether the opinion is correct but whether the preponderance of the evidence establishes that the opinion is reliable.[18] "It is the role of the adversarial system, not the court, to highlight weak evidence."[19]

---

[11] *Bocanegra*, 320 F.3d at 584–85 (citing *Daubert*, 509 U.S. at 593–94).
[12] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).
[13] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 326 (5th Cir. 2004).
[14] *See, e.g., Kumho Tire*, 526 U.S. at 151–53.
[15] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).
[16] *Rosiere v. Wood Towing, LLC*, No. 07-1265, 2009 WL 982659, at *1 (E.D. La. Apr. 8, 2009) (citing *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)) (emphasis added); *Wolfe v. McNeil-PPC, Inc.*, No. 07-348, 2011 WL 1673805, at *6 (E.D. Pa. May 4, 2011).
[17] *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596) (internal quotation marks omitted).
[18] *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).
[19] *Primrose*, 382 F.3d at 562.

## LAW AND ANALYSIS

Plaintiffs do not contest Ly's qualifications and do not dispute that Ly is qualified as an expert by knowledge, skill, experience, training, or education to opine that, "Mr. Joseph's death was most likely due to a sudden cardiac dysrhythmia precipitated by a combination of hyperkalemia, acidosis, and diphenhydramine toxicity in a highly agitated acutely psychotic individual but not as a result of the brief encounter with police on February 7, 2017."[20]

Plaintiffs seek to limit the testimony of Ly by excluding any and all testimony related to the following: (1) Joseph's purported self-neglect prior to his arrest; (2) incidents of Joseph's psychosis prior to February 7, 2017; (3) Joseph's interactions with police prior to February 7, 2017; and (4) Joseph's prior use of a controlled substance.[21] The Court will evaluate each of these in turn.

### I.  Self-neglect

Plaintiffs argue Ly's testimony relating to Joseph's self-neglect must be excluded because it is not based on reliable methodology or sufficient facts or data.[22] Plaintiffs argue Ly does not identify any scientific or factual basis for his assertion that Joseph's purported self-neglect led to acute kidney injury.[23] Ly states "[d]uring acute psychotic episodes, individuals do not have sufficient insight to tend to their basic needs and may neglect hydration, nutrition and personal hygiene."[24] Plaintiffs argue Ly does not identify any factual basis for his assertion that Joseph had neglected his self-care nor does he list

---

[20] R. Doc. 70-1 at 4.
[21] *Id.* at 2.
[22] *Id.* at 5.
[23] R. Doc. 103-1.
[24] R. Doc. 70-2 at 6.

any experience, training, or research on the self-care of individuals suffering from mental illness in his CV.[25]

During his deposition, Ly testified that when he opined about self-neglect he was referencing inadequate re-hydration as the result of Joseph's exercise, Joseph's not taking his anti-psychotic medication, and Joseph's possible abuse of Benadryl.[26] Ly further testified that he had no information about Joseph's personal hygiene and did not intend to testify with respect to that topic.[27]

Ly's training is in emergency medicine and medical toxicology.[28] He deals with patients suffering acute psychosis who exhibit symptoms similar to those of Joseph on a daily basis.[29] He is qualified by training and experience to testify on these matters. Experts may respond to hypothetical questions which assume facts, so long as the assumed facts are supported by the evidence. So long as this standard is met, Ly will be allowed to answer hypothetical questions with respect to whether Joseph's inadequate re-hydration and failure to take his anti-psychotic medication impacted his cause of death.[30]

Any weaknesses in his testimony based on questionable assumptions may be dealt with on cross-examination.

## II.   Joseph's interactions with the police prior to February 7, 2017 and earlier episodes of psychosis

The Court issued an order on March 23, 2021 related to multiple other motions in limine by both parties.[31] In that order, the Court decided Plaintiffs' motion in limine to

---

[25] R. Doc. 70-1 at 5-6.
[26] R. Doc. 85 at 4.
[27] R. Doc. 103-1 at 136.
[28] R. Doc. 93-2 at 6, 40-41.
[29] *Id.* at 46-49.
[30] Joseph's use of Benadryl is addressed below.
[31] R. Doc. 213.

bar reference to prior bad acts by Joseph and to limit the evidence regarding his June 28, 2016 encounter with police.[32] The Court held "Plaintiffs will not be allowed to introduce evidence regarding the June 28, 2016 incident" because the introduction of this evidence "has limited probative value and any probative value it has is outweighed by risk of undue prejudice."[33] This ruling applies to Ly, as well. The Court already has determined the parties' expert witnesses and Joseph's treating physician may refer to and rely on Joseph's 2016 medical records without discussing the details of the interaction with the police leading to his hospitalization, "other than to say he had a mental health-related episode," which is not disputed.[34]

### III.   Joseph's prior use of a controlled substance

Plaintiffs seek to prevent Ly from providing any evidence regarding Joseph's prior use of controlled substances. Ly states in his report that Joseph tested positive for cocaine on June 29, 2016, roughly eight months prior to the incident at issue in this case.[35] Ly states "[c]ocaine as well as other drugs and medications may precipitate psychosis or excited delirium syndrome in the presence or absence [of] schizophrenia."[36]

Defendants argue Joseph's cocaine use shows he has a history of abusing drugs, which is relevant to Joseph's purported misuse of Benadryl.[37]  Federal Rule of Evidence Rule 403 states "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

---

[32] R. Doc. 136.
[33] R. Doc. 213 at 8.
[34] *Id*. at 9. The Plaintiffs concede Joseph "was having a psychiatric incident in February 2017." R. Doc. 70-1 at 7.
[35] R. Doc. 70-2 at 6.
[36] *Id*.
[37] R. Doc. 85 at 9.

presenting cumulative evidence." It is clear that Joseph's cocaine use, eight months prior to the incident at issue, is of little probative value and that whatever probative value it might have is outweighed by the risk of undue prejudice. Ly testified in his deposition that cocaine use did not contribute to Joseph's death.[38] Accordingly, Plaintiffs' motion as to Joseph's prior use of cocaine is granted. Ly will be allowed to testify that Joseph had an elevated (toxic) level of diphenhydramine (Benadryl) in his system on the day of the incident and that, based on the amount in Joseph's system, it is his opinion the Benadryl was not taken by mistake.

## CONCLUSION

**IT IS ORDERED** that Plaintiffs' Motion to Exclude in Part the Testimony of Defendants' Expert Dr. Bihn Ly is **GRANTED in part and DENIED in part.**

**New Orleans, Louisiana, this 7th day of June, 2021.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[38] R. Doc. 103-1 at 82.