## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KATIE JOSEPH, ET AL.,**<br>      **Decedents** | **CIVIL ACTION** |
| **VERSUS** | **NO.  17-5051** |
| **JOHN DOE, ET AL.,**<br>      **Defendants** | **SECTION: "E" (4)** |

### ORDER AND REASONS

Before the Court is Plaintiffs' Motion to Exclude the Testimony of Defendants' Expert Kerry Najolia.[1] Defendants oppose Plaintiffs' motion.[2] Plaintiffs filed a reply[3] and a supplemental memorandum in support,[4] and Defendants filed a supplemental memorandum in opposition.[5] For the reasons that follow, Plaintiffs' motion is **GRANTED IN PART** and **DENIED IN PART**.

### FACTUAL BACKGROUND

The underlying facts of this lawsuit have been outlined in full by the Fifth Circuit, and the Court need not repeat them here.[6] In short, there are four remaining claims in this lawsuit: (1) a Section 1983 excessive force claim against Officers Martin and Costa; (2) a state-law battery claim against Officers Martin and Costa; (3) a state-law wrongful death claim against Officers Martin, Costa, Varisco, Rolland, Verrett, Faison, Vinet,

---

[1] R. Doc. 75.
[2] R. Doc. 87.
[3] R. Doc. 95.
[4] R. Doc. 114.
[5] R. Doc. 123.
[6] *Joseph on Behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 325-28 (5th Cir. 2020); *Joseph v. Doe*, Civ. A No. 17-5051, 2019 WL 95467 (E.D. La. Jan. 3, 2019).

Dugas, Morvant, and Thompson; and (4) a state-law survival claim against Officers

Martin, Costa, Varisco, Rolland, Verrett, Faison, Vinet, Dugas, Morvant, and Thompson.[7]

## **LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert

witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help
> the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data; (c) the testimony is the
> product of reliable principles and methods; and (d) the expert has reliably
> applied the principles and methods to the facts of the case.[8]

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals,*

*Inc.*,[9] provides the analytical framework for determining whether expert testimony is

admissible under Rule 702.

Under *Daubert*, courts, as "gatekeepers," are tasked with making a preliminary

assessment of whether expert testimony is both relevant and reliable.[10] The party offering

the expert opinion must show by a preponderance of the evidence that the expert's

testimony is reliable and relevant.[11]

The reliability of expert testimony "is determined by assessing whether the

reasoning or methodology underlying the testimony is scientifically valid."[12] In *Daubert*,

the Supreme Court enumerated several non-exclusive factors that courts may consider in

---

[7] There are no claims in this lawsuit against the City of Gretna under *Monell v. Department of Social Services of City of New York* in this lawsuit. Plaintiffs voluntarily dismissed their *Monell* claim on August 6, 2018.  R. Doc. 69.

[8] FED. R. EVID. 702.

[9] 509 U.S. 579 (1993).

[10] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (citing *Daubert*, 509 U.S. at 592-93).

[11] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002).

[12] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007); *see also Burleson v. Texas Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004); *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584-85 (5th Cir. 2003).

evaluating the reliability of expert testimony.[13] "These factors are (1) whether the expert's theory can or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community."[14]

The Supreme Court has cautioned that the reliability analysis must remain flexible: the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."[15] Thus, "not every *Daubert* factor will be applicable in every situation . . . and a court has discretion to consider other factors it deems relevant."[16] The district court is offered broad latitude in making expert testimony determinations.[17]

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility and should be left for the finder of fact.[18] "Unless wholly unreliable, the data on which the expert relies goes to the weight and not the admissibility of the expert opinion."[19] Thus, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[20] The Court is not concerned with whether the opinion is correct but whether

---

[13] *Daubert*, 509 U.S. at 592-96.
[14] *Bocanegra*, 320 F.3d at 584-85 (citing *Daubert*, 509 U.S. at 593-94).
[15] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).
[16] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 326 (5th Cir. 2004).
[17] *See, e.g., Kumho Tire*, 526 U.S. at 151-53.
[18] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).
[19] *Rosiere v. Wood Towing, L.L.C.*, No. 07-1265, 2009 WL 982659, at *1 (E.D. La. Apr. 8, 2009) (citing *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)) (emphasis added); *Wolfe v. McNeil-PPC, Inc.*, No. 07-348, 2011 WL 1673805, at *6 (E.D. Pa. May 4, 2011).
[20] *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596) (internal quotation marks omitted).

the preponderance of the evidence establishes that the opinion is reliable.[21] "It is the role

of the adversarial system, not the court, to highlight weak evidence."[22]

## **LAW AND ANALYSIS**

Defendants have submitted the expert report of Officer Kerry Najolia,[23] who

Plaintiffs concede has been qualified as, and has testified as, an expert on police practice,

procedure, training, police officer survival/defensive tactics, police use of force, and

police canines in numerous Louisiana state and federal courts.[24] In their motion,

Plaintiffs ask the Court to exclude the expert testimony of Najolia, asserting that (1) his

opinions are improper legal conclusions, and (2) his opinions are improperly based on

disputed facts that Najolia assumed were true.

In *Graham v. Connor*, the Supreme Court held that "*all* claims that law

enforcement officers have used excessive force – deadly or not – in the course of an arrest,

investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth

Amendment and its 'reasonableness' standard . . ."[25] The Court elaborated:

> Determining whether the force used to effect a particular seizure is
> "reasonable" under the Fourth Amendment requires a careful balancing of
> "'the nature and quality of the intrusion on the individual's Fourth
> Amendment interests'" against the countervailing governmental interests at
> stake. Our Fourth Amendment jurisprudence has long recognized that the
> right to make an arrest or investigatory stop necessarily carries with it the
> right to use some degree of physical coercion or threat thereof to effect it.
> Because "[t]he test of reasonableness under the Fourth Amendment is not
> capable of precise definition or mechanical application," however, its proper
> application requires careful attention to the facts and circumstances of each
> particular case, including the severity of the crime at issue, whether the
> suspect poses an immediate threat to the safety of the officers or others, and
> whether he is actively resisting arrest or attempting to evade arrest by flight.

---

[21] *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).
[22] *Primrose*, 382 F.3d at 562.
[23] R. Doc. 75-2.
[24] *Id.* at p. 3.
[25] 490 U.S. 386, 395 (1989).

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.[26]

"[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."[27]

## I.    Najolia's opinions that are improper legal conclusions will be excluded.[28]

Najolia's testimony will be excluded at trial insofar as it relates to the purported "reasonableness," "appropriateness," "excessiveness," or "justification" of certain officers' actions when arresting Decedent, Kendole Joseph, on February 7, 2017. To prepare his expert report, Najolia reviewed numerous materials related to the arrest, including photographs, videos, deposition transcripts, training documents, several police reports, discovery responses, the policies of the Gretna Police Department, and other documents.[29] Based on his review of those materials, combined with his experience and training, Najolia sets forth his view of the facts and expresses several opinions about the events that occurred on February 7, 2017, including Decedent's arrest.[30] Among other things, Najolia opines that, based on the totality of the circumstances, the force used by the Gretna police officers who arrested Decedent was "reasonable," "justified,"

---

[26] *Id.* at 396 (citations omitted).

[27] *Id.* at 397.

[28] As an initial matter, Plaintiffs attack Najolia's report as inaccurate because he failed to disclose (1) all cases in which he had been retained as an expert, in some of which he was excluded, (2) that he had trained Officer Martin, and (3) that his list of publications and educational history were deficient or inflated. R. Doc. 114 at p. 1-3, 7. Najolia's report and its attachments, while sloppy at best, open his credibility to question by the jury. Najolia advised that he is now aware that his CV is incorrect. His Rule 26 report attachments should be amended or the next judge who sees them may consider the inaccuracies intentional and exclude his testimony because he is perceived as untrustworthy. Fed. R. Evid. 615.

[29] R. Doc. 75-2 at pp. 3-4.

[30] *Id.* at pp. 10-15.

"authorized," "appropriate," and "not excessive," due, in part, to Decedent's "control resistant [and] aggressive behavior" and his refusal "to comply with officers' demands."[31]

Najolia's opinions regarding whether the force used in the arrest of Decedent was reasonable, appropriate, justified, or excessive go extend beyond "embracing" ultimate issues of law and fact[32] and instead offer "ultimate legal conclusions," for which "[t]he judge is the source of law and the only expert needed by a jury."[33] Although the Fifth Circuit has explained that Rule 704 "abolished the *per se* rule against testimony regarding ultimate issues of fact, 'courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law.'"[34] Testimony that tells the jury what conclusion to reach or merely states a legal conclusion is not helpful to the jury.[35] Whether the officers' actions were reasonable or they used excessive force is an ultimate question for the jury to decide

---

[31] *Id.* at p. 14.

[32] Fed. R. Evid. 704 ("An opinion is not objectionable just because it embraces an ultimate issue."); *see also Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009).

[33] *Manton v. Strain*, No. 09-339, 2010 WL 4364480, at *2 (E.D. La. Oct. 21, 2010) (quoting *Bodzin v. City of Dallas*, 768 F.2d 722, 725 (5th Cir. 1985); *see also Hayward v. Landry*, No. 02-927, 2006 WL 8432349, at *1 (M.D. La. Aug. 3, 2006) (explaining that expert testimony on "ultimate questions of law is not favored" and that "[t]he distinction between ultimate facts and ultimate questions of law is important because testimony on ultimate factual questions aids the jury in reaching a verdict while testimony which articulates and applies the relevant law . . . circumvents the jury's decision-making function by telling them how to decide the case," and referencing numerous cases where "federal circuits have held that an expert witness may not give an opinion on ultimate issues of law." (internal quotations and citations omitted)); *Tolan v. City of Bellaire*, No. 09-1324, 2015 WL 12765413, at *3 (S.D. Tex. Aug. 27, 2015) (noting that both sides are "correct" in arguing that "the other's expert cannot provide opinions on purely legal issues, and precluding both experts from offering legal conclusion opinions" at trial).

[34] *Manton*, 2010 WL 4364480, at *2 (quoting *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977))

[35] *See, e.g., Snap-Drape*, 98 F.3d at 197–98 (noting that certain expert reports improperly contained legal conclusions, which "would be of no assistance in making findings of fact"); *Metrejean v. REC Marine Logistics, L.L.C.*, No. 08-5049, 2009 WL 3062622, at *2 (E.D. La. Sept. 21, 2009) (citing *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997) ("Expert testimony that consists of legal conclusions cannot properly assist the trier of fact" in understanding evidence or determining facts in issue.")).

after they have heard the evidence and this Court has instructed them on the law at the conclusion of the case.[36]

A use of force expert may offer testimony regarding police policies and procedures as well as whether or not specific acts by a defendant comported with those policies or procedures.[37] But the testimony must not cross the borderline long recognized by this court between a "mere explanation of the expert's analysis of the facts" and a "forbidden opinion on the 'ultimate legal issue'" in the case.[38] Thus, Najolia may opine on the standards or practices applicable to the incident involving Decedent, and whether or not certain standards or practices were met or violated by the conduct of the Gretna police

---

[36] *See Graham*, 288 F. Supp. 3d at 730 (excluding defendants' law enforcement experts' opinions (a) that "the Defendant Officers' use of force was reasonable, necessary, and only to the level of force necessary to accomplish a legitimate police objective and overcome [Decedent's] violent resistance" and (b) that "any officer in the same or similar circumstances as [Defendant Officers] could reasonably believe that [his or her] use of force was reasonable, necessary, and only the level needed and could have acted in the same or similar manner as [Defendant Officers]" under Fed. R. Evid. 702, *Daubert*, and *Kuhmo*, because the experts' reports were "ridded with legal conclusions concerning ... use of force," did not "preface [their] conclusions with the legal standards for . . . use of force," did not "address whether [they] had sufficient facts to reach [their] conclusions or discuss procedures or methodologies in the area of policing including those employed . . . in determining whether the use of force was excessive on a continuum of force," and accepted "carte blanche, the Officers' version of the facts while labeling [Decedent's] version of the vents as merely 'allegations' or 'claims,' which implies his version is open to challenge, debate, or doubt," among other reasons.); *see also Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (holding that it is "error to allow expert testimony on whether an officer used unreasonable force," and affirming district court's exclusion on summary judgment of Decedent's expert's report opining that the officer's "use of deadly force . . . was unnecessary and objectively unreasonable and . . . violated well-established law enforcement use of force training and standards and was a greater level of force than any other reasonable officer would have used under the same or similar circumstances . . ."); *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (finding that district court erred by admitting an officer's testimony about the reasonableness of another officer's use of force [*i.e.*, shooting] because "Rule 704(a) does not allow a witness to give legal conclusions" and "[r]easonableness [of an officer's use of force] under the Fourth Amendment or Due Process Clause is a legal conclusion." (internal citations omitted)).

[37] *See, e.g., Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004) (finding testimony about specific police-practice issues, including "the continuum of force employed by officers generally, the specific training the [defendants] received, and [the expert's] opinion that if the witnesses' testimony is credited, the [defendants'] actions violated nationally recognized police standards governing excessive force" was permissible); *Kopf v. Skyrm*, 993 F.2d 374, 379 (4th Cir. 1993) (finding testimony from use of force expert regarding prevailing police standard of conduct regarding use of police dogs and slapjacks was permissible); *Samples v. City of Atlanta*, 916 F.2d 1548, 1551 (11th Cir. 1990) (finding testimony regarding prevailing law enforcement standards in discharging a firearm was permissible).

[38] *United States v. Speer*, 30 F.3d 605, 610 (5th Cir. 1994).

officers during the incident.[39] Najolia may not testify that the conduct of the Gretna police officers met or failed to meet the applicable legal standard, such as the "reasonableness" of the Gretna police officers' use of force against Decedent.[40]

In their opposition, Defendants assert they are not calling Najolia to offer legal conclusions as they recognize this is the domain of the fact finder at trial.[41] Defendants represent Najolia will not provide, nor will Defendants elicit, testimony that will cause Najolia to opine on the reasonableness of Defendants' actions or whether their actions constituted excessive force.[42] The Court accepts this representation. Najolia is barred from offering legal conclusions at trial.[43] This Order reserves the right to each side to object at trial to any that question that may elicit a legal conclusion.[44]

## II. Najolia must testify to the underlying facts, assumptions, and data on which he relied before expressing his opinions.

Because Najolia has no personal knowledge relative to Decedent's February 7, 2017 arrest, Plaintiffs contend he essentially engages in a credibility determination and appears to accept, *in toto*, Defendants' version of events. One example on which Plaintiffs heavily rely is Najolia's repeated characterization of Decedent as an active resister who was combative and aggressive, striking one of the arresting officers, Officer Martin, several

---

[39] *See infra* n. 38.

[40] *McBroom v. Payne*, 478 F.App'x 196 (5th Cir. 2012); *United States v. Williams*, 343 F.3d 423, 435 (5th Cir.), cert. denied, 540 U.S. 1093 (2003).

[41] *Id.*

[42] R. Doc. 87 at p. 7; R. Doc. 123 at p. 4.

[43] While Plaintiffs did not raise the issue, Nojalia also opined that Decedent's actions constituted violations of state criminal law during the incident. R. Doc. 75-2 at p. 13. Such an opinion is a legal conclusion and is also barred. *See Meganathan v. Signal Int'l L.L.C.*, No. 1:13-CV-497, 2015 WL 11109846, at *9 (E.D. Tex. June 26, 2015) ("Payne, however, is opining that Signal's conduct was a violation of the law – this is the very essence of a legal conclusion. While no cause of action hinges on whether Signal complied with OSHA (which is why Payne's testimony is irrelevant) that does not mean his opinions that certain laws were violated are not legal conclusions.").

[44] *See Harris*, 2005 WL 6009992 (M.D. La. April 8, 2005) (disallowing testimony by Kerry Najolia "concerning the reasonableness of the actions of the police officer in making [an] arrest"); *see also Fetty*, 2021 WL 510623, at *8 (excluding expert testimony that described actions as "deliberate" or "reasonable"); *Brown v. Strain*, Civ. A. No. 09-2813, 2010 WL 3523026, at *2 (E.D. La. Aug. 31, 2010) (same).

times.[45]  Plaintiffs note that Najolia discounts other testimony, such as that of the store

clerk – trapped behind the counter during the arrest – who testified at her deposition that

she did not see Decedent strike an officer.[46] In addition, two other officers also testified

at their depositions that they never saw Decedent strike an officer.[47] Apparently after

making his own credibility determinations, Najolia concludes that on February 7, 2017

Decedent actively resisted the officers and

> [a]n intense struggle ensued between Mr. Joseph and both Officers (Martin and Leduff) who were trying to restrain Mr. Joseph with the aid of handcuffs so he could be detained for further investigation. Mr. Joseph punched Officer Martin. . .
>        Mr. Joseph physically resisted those efforts and became more violent and combative with the officers. Mr. Joseph attacked, then struck Officer Martin in an attempt to get away. Mr. Joseph grabbed the inside of Officer Martin's vest and refused to let go. . .[48]

Having arrived at these conclusions of fact, Najolia then renders opinions regarding the

ultimate legal issues in the case. Specifically, Najolia concludes that, "based on the totality

of the circumstances, the officers' use of force was justified, reasonable and in accordance

with policy, procedures, protocols and training."[49]

    The Court has excluded Najolia's testimony offering legal conclusions. Plaintiffs

nevertheless are justifiably concerned that Naolia will in his testimony at trial refer to

Decedent as an "active resister."[50] Whether Decedent was actively resisting is relevant to

the objective reasonableness of the force used by the officers.[51] "Officers may consider a

suspect's refusal to comply with instructions . . . in assessing whether physical force is

---

[45] R. Doc. 75-2 at p. 5.
[46] R. Doc. 75-3 at p. 17.
[47] R. Doc. 75-4 at p. 53; R. Doc. 75-5 at p. 21.
[48] R. Doc. 75-2 at p. 5.
[49] *Id.* at p. 14.
[50] R. Doc. 75-1 at pp. 11-12.
[51] *Graham*, 490 U.S. at 396.

needed to effectuate the suspect's compliance."[52] "However, officers must assess not only the need for force, but also 'the relationship between the need and the amount of force used.'"[53] Thus, whether the Decedent was resisting arrest is relevant. Najolia may testify about the resistance offered by Joseph and how that resistance affected whether each officer's response was in accordance with accepted police practices, but Najolia may not refer to Decedent as an "active resister" because that is a legal question for the jury. Furthermore, his testimony referring to the Decedent as an "active resister" would risk inappropriate bolstering and undue prejudice.

The "facts and data" language in Rule 702 is broad enough to allow an expert to rely on hypothetical facts that are supported by the evidence.[54] So long as Defendants introduce sufficient evidence at trial to support their version of the facts (and these facts are the version of the facts assumed by Najolia), the Defendants may ask Najolia to testify as to the resistance offered by Decedent during the arrest assuming those facts are true.[55] Najolia may not simply regurgitate (or anticipate) factual testimony about the events at issue. Instead, once the facts necessary for him to render an opinion are in evidence, he may assume those facts as a hypothetical and give opinion testimony based on the assumption of those facts.

To ensure expert testimony in this case is helpful to the jury, the Court will exercise its discretion under Federal Rule of Evidence 705 to require that expert witnesses first

---

[52] *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 729 (5th Cir. 2018) (citing *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)).

[53] *Deville*, 567 F.3d at 167 (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)).

[54] *Powers v. Union Pac. R. Co.*, No. CIV A 907-CV-212-TH, 2009 WL 734707, at *2 (E.D. Tex. Mar. 19, 2009) (citing Fed. R. of Evid. 702 advisory committee notes). Because any hypothetical fact needs to be supported by the evidence, any expert witness who will respond to such questions need testify after the fact witnesses.

[55] *See Estate of Carey v. Hy-Temp Mfg., Inc.*, 929 F.2d 1229, 1235 n.2 (9th Cir.1991) ("[E]xpert witnesses may be competent to give opinions based upon hypothetical facts even though a foundation that the expert has personal knowledge of those facts has not been laid.").

testify to the underlying facts, assumptions, and data on which they relied before expressing their opinions.[56] This Court is given considerable latitude over the order in which evidence will be presented to the jury. "[S]afeguards [to minimize 'unfair' burden on cross-examiner] are reinforced by the discretionary power of the judge to require preliminary disclosure [of facts] in any event."[57] Obviously, the facts or data provided by expert witnesses must comply with Federal Rule of Evidence 703. It is assumed that opposing counsel will vigorously cross-examine expert witnesses on the bases for their opinions, including whether their opinions would change if the trier of fact finds the facts to be otherwise. Indeed, "the Federal Rules of Evidence deliberately shift the burden to the cross-examiner to ferret out whatever empirical deficiencies may lurk in the expert opinion."[58] Plaintiffs may use cross-examination during the introduction of the factual testimony or during expert witness testimony to test the correctness of whatever facts the expert assumes as the basis for his opinions. The Court finds this to be the appropriate remedy for Plaintiffs' concerns.

## **CONCLUSION**

Accordingly, Plaintiffs' motion to exclude the testimony of Officer Najolia[59] is **GRANTED IN PART** and **DENIED IN PART**. Testimony by Defendants' expert, Kerry Najolia, shall be excluded as to any ultimate legal conclusions regarding whether the Gretna police officers' use of force when arresting Decedent on February 7, 2017 was

---

[56] This will apply to all retained experts who testify at trial. *See, e.g., U.S. v. Perocier*, 269 F.R.D. 103, 109, 115 (D.P.R. 2009) (finding it is within the court's discretion "to require an expert to testify to the underlying facts and data before giving opinion testimony"); *United States v. Brien*, 59 F.3d 274, 278 (1st Cir 1995); *Univ. of Rhode Island v. A.W. Chesterton Co.*, 2 F.3d 1200, 1218 (1st Cir. 1993).
[57] See Fed. R. Evid. 705 advisory committee's note.
[58] *Univ. of Rhode Island*, 2 F.3d at 1218.
[59] R. Doc. 75.

reasonable, excessive, or justified. He shall be allowed to testify relative to other topics in accordance with the instructions set forth above.[60]

**New Orleans, Louisiana, this 7th day of June, 2021.**

_Susie Morgan_
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[60] The Court's ruling that expert witnesses must first testify to the underlying facts, assumptions, and data on which they relied before expressing their opinions applies to all expert witnesses.